IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

TRAVIS MORGAN,

    Plaintiff,

v.

STANLEY WILLIAMS and
SUSAN HUTCHINSON,

    Defendants.

CIVIL ACTION NO.: CV614-056

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Smith State Prison in Glennville, Georgia, filed a cause of action, as amended, pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. (Docs. 1, 8, 21.) Defendants Stanley Williams and Susan Hutchinson ("Defendants") filed a Motion to Dismiss. (Doc. 35.) Plaintiff filed a Response (Doc. 42) and Defendants filed a Reply. (Doc. 43.) Plaintiff filed a Surreply. (Doc. 44.) For the reasons which follow, Defendants' Motion should be **GRANTED**.

## BACKGROUND[1]

Plaintiff alleges he was diagnosed with glaucoma in his left eye in 2010. (Doc. 21, p. 3.) Plaintiff asserts he began experiencing loss of vision in his left eye between December 2013 and January 2014, which caused headaches. Plaintiff also asserts he wrote several emergency medical requests, and Doctor Jefferies responded by giving him an eye examination and Tylenol for his pain and referring Plaintiff to Augusta State Medical Prison ("ASMP"). Plaintiff

---

[1] The recited allegations are taken from Plaintiff's Complaint, as amended, (Docs. 1, 8, 21), and are viewed, as they must be at this stage, in the light most favorable to Plaintiff.

contends it took eight (8) weeks to be transported to ASMP, and his appointment was cancelled. Plaintiff alleges that he was in the medical unit at Smith State Prison when two (2) cell phones and a charger were found on his person. (Id. at p. 4.) Plaintiff claims he was returned to his cell and submitted another emergency medical request, and Defendant Hutchinson "clearly wrote a false disposition" to his request. (Doc. 1, p. 6.) According to Plaintiff, he was taken back to ASMP two (2) days later and only received a "rush job" because the examination was much shorter than usual and less involved than his previous examinations. (Id.; Doc. 21, p. 5.) Plaintiff alleges he and his grandmother informed Defendant Williams that Plaintiff was not receiving proper medical treatment, and Defendant Williams did nothing to help Plaintiff. In fact, Plaintiff states he was on the middle of a hunger strike in an effort to be sent back to ASMP, when he informed Defendant Williams that his vision was getting worse. (Doc. 8, p. 5.) Plaintiff claims he became so concerned about going blind without medical treatment that he swallowed 30 to 40 prescription pills so he could be seen by outside medical providers. Plaintiff avers his health is being neglected at Smith State Prison based on the disciplinary report he received after he was found with the cell phones and charger on his person. (Doc. 1.)

## DISCUSSION

Defendants set forth several grounds for dismissal of Plaintiff's Complaint in their Motion. First, Defendants contend Plaintiff failed to exhaust his administrative remedies regarding his claims against Defendant Williams. Defendants further argue that Plaintiff fails to set forth a viable deliberate indifference claim. Finally, Defendants maintain they are entitled to qualified immunity.

As set forth below, the undersigned agrees that Plaintiff failed to exhaust his available administrative remedies as to Defendant Williams and that Plaintiff fails to set forth a viable deliberate indifference claim against Defendant Hutchinson.

I. **Exhaustion of Administrative Remedies**

A. **Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. §1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–

91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). "However, 'while § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). In Brown, the Eleventh Circuit held "that 42 U.S.C. §

1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide." 212 F.3d at 1210. Nevertheless, the purpose of section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001)). Rather, § 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. This SOP no longer requires an inmate to attempt to informally resolve his complaint before filing a formal grievance. (Doc. No. 35-2, p. 14.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 17.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at p. 19.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the

grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 21.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) Time limits may be waived for good cause. (Id. at pp. 17, 21.)

With these standards and procedures in mind, the Court now addresses Defendants' arguments that Plaintiff did not exhaust his administrative remedies as to his claims against Defendant Williams.

### B. Assessment of Plaintiff's Exhaustion as to Defendant Williams

Defendants note Plaintiff filed three (3) grievances relating to his medical care claims before filing his cause of action on June 3, 2014: 1) Grievance Number 168823 on March 12, 2014; 2) Grievance Number 169131 on March 18, 2014; and 3) Grievance Number 171889 on April 29, 2014. (Doc. 35-1, p. 10.) Defendants assert Plaintiff contended in each of these grievances that he did not receive adequate medical care, yet he failed to reference any action or inaction by Defendant Williams in these grievances other than to assert Defendant Williams denied his grievances. (Id. at pp. 10–11.) Defendants maintain there is no record of Plaintiff filing a grievance between March 2014 and June 3, 2014, in which Plaintiff alleged Defendant Williams interfered with his medical care. Accordingly, Defendants contend Plaintiff failed to exhaust his administrative remedies concerning any claims against Defendant Williams, and Plaintiff's claims against Defendant Williams should be dismissed. (Id. at p. 11.)

Plaintiff asserts he exhausted his administrative remedies concerning his claims against Defendant Williams. Plaintiff alleges he stated in Grievance Number 168823 "the Administration [Stanley Williams] called" ASMP and "requested or ordered [Plaintiff's] return

6

to Smith State Prison (SSP) without treatment." (Doc. 42, p. 3) (first alteration in original.) Plaintiff also alleges he stated in this grievance that, due to "unknown reasons", "there was interfer[e]nce with his [m]edical treatment (other than being caught with contraband)." (Id.) Plaintiff further alleges he mentioned "[i]nterfer[e]nce twice[ ]" in the appeal of this grievance. (Id.) Plaintiff contends he "clearly states" a violation of his Eighth Amendment rights in this grievance, and he "[c]learly . . . intended to illustrate" Defendant Williams' connection to this violation. (Id.) Plaintiff maintains he specifically identified Defendant Williams in the appeal for Grievance Number 171889. (Id. at p. 4.) Plaintiff asserts Defendant Williams "was undisputably (sic) aware" of Plaintiff's grievances because Defendant Williams reviews all grievances and makes the decision for these grievances. (Id. at p. 5.)

In response, Defendants note that, contrary to Plaintiff's assertions, the statement in his appeal of his first grievance that he was being denied medical treatment for unknown reasons was insufficient to place Defendant Williams on notice that Plaintiff held him responsible for the alleged inadequacy of his medical treatment. Defendants contend Plaintiff complains in the appeal of his third grievance about Defendant Williams denying his grievance. Defendants assert Plaintiff failed to give prison officials a fair opportunity to consider Plaintiff's allegations against Defendant Williams. (Doc. 43, p. 3.)

To assess the parties' respective arguments, the Court reviews each of Plaintiff's grievances.

    *1.*    *Grievance number 168823*

In Grievance Number 168823, which is dated March 12, 2014, Plaintiff asserted he was returned to Smith State Prison from ASMP on March 11, 2014, even though he was not on the transfer list. (Doc. 35-2, p. 30.) Plaintiff stated he had a medical appointment scheduled for

March 11, 2014, yet he had to leave ASMP without receiving treatment. Plaintiff also stated he knew that administration called ASMP for his return "[d]ue to unknown reasons. . . Medical is trying to kill me." (Id.) In denying this grievance, Defendant Williams informed Plaintiff his appointment at ASMP was rescheduled due to an emergency lockdown and was rescheduled for March 13, 2014, at which time he was seen at the ophthalmology clinic. (Id. at p. 29.) Plaintiff stated in his appeal of this denial his desire to be in a prison with around-the-clock medical supervision because the medical staff and nurses at Smith State Prison were violating his rights because he was receiving "unjust medical treatment[.]" (Id. at p. 28.) Plaintiff also stated he lost his vision and had not been given proper "optical treatment". (Id.) Plaintiff concluded his appeal by stating he feared for his life in the hands of Smith State Prison medical staff and Phyllis Allen, the nursing director. (Id.)

    *2.    Grievance number 169131*

Plaintiff filed Grievance Number 169131 on March 18, 2014, and asserted that no one in medical at Smith State Prison had seen him as of March 17, 2014. Plaintiff asserted that he had used eye drops for five (5) days, and his vision had not been restored. Plaintiff stated he had already filed numerous complaints about Smith State Prison medical and contacted lawyers and Internal Affairs. Plaintiff averred that he was charged co-pays without receiving treatment. (Id. at p. 38.) Defendant Williams informed Plaintiff in the denial of this grievance that Phyllis Allen reported that Plaintiff has had a prescription for eye drops since 2010, the medical condition of his eye would never go away completely, and Plaintiff had been noncompliant with taking the drops. (Id. at p. 37.)[2]

---

[2] It appears that Plaintiff did not appeal the denial of Grievance Number 169131, as Defendants did not submit a copy of an appeal for this grievance but did so for Plaintiff's other two (2) grievances.

8

### 3. *Grievance Number 171889*

Plaintiff filed Grievance Number 171889 on April 29, 2014, and noted he had a grievance pending in the appeal stage about his Eighth Amendment rights being violated. Plaintiff continued by stating:

> My health care is being neglected and I am in fear of my life by the hands of Smith State Medical Staff and Ms. Phyllis Allen the Director. I am not receiving adequate medical treatment and I have a health request receit (sic) <u>proof</u> with a false disposition report wrote (sic) on it dated 3/11/14 signed by "Nurse Hutch"[.] This is evidence that my 8th Amendment is being deliberately violated!!

(<u>Id.</u> at p. 46) (emphasis in original.) Plaintiff's requested resolution was to have "Nurse Hutch" charged with "falsely exploiting medical documents. For some unknown reason I am not receiving '<u>equal</u> medical treatment.'" (<u>Id.</u>) (emphasis in original.) Defendant Williams denied this grievance and informed Plaintiff his allegations had been addressed through other grievances (Numbers 168823 and 169131). Defendant Williams also informed Plaintiff that he was receiving adequate medical treatment. (<u>Id.</u> at p. 47.)

On appeal of this denial, Plaintiff stated, "The Warden <u>continues</u> to deny my grievances and continues to avoid my claim that I am grieving for his reason to deny my grievance is <u>incoherent</u> and filled with frivolous talk about me taking my <u>eye drops</u>[.]" (<u>Id.</u> at p. 45) (emphases in original.) Plaintiff also stated his claim concerned Nurse Hutchinson deliberately neglecting his medical request by breaking her oath and lying/making a false disposition "in order to delay or deny" Plaintiff equal treatment for his medical needs "for unknown reasons other then (sic) to harm" him. (<u>Id.</u>)

The undersigned notes Plaintiff's assertions that he exhausted his administrative remedies as to his claims against Defendant Williams and the Court's attendant duty to accept these assertions as true. <u>Turner</u>, 541 F.3d at 1082. However, there is no evidence before the Court to

9

support these assertions. Specifically, Plaintiff contends in response to Defendants' Motion that he alleged in Grievance Number 168823 that "the Administration [Stanley Williams] called" ASMP to have Plaintiff returned to Smith State Prison without receiving treatment. (Doc. 42, p. 3.) Plaintiff also contends he "clearly state[d]" a violation of his Eighth Amendment rights in this grievance, and he "[c]learly . . . intended to illustrate" Defendant Williams' connection to this violation. (Id.) Plaintiff states in his Reply that he provided as much relevant information as he could in this grievance. (Doc. 44, p. 1.)

Contrary to Plaintiff's contentions, Plaintiff makes no mention of Defendant Williams in this grievance, only that Smith State Prison "administration" requested Plaintiff's return. (Doc. 35-2, p. 30.) Even if Plaintiff's mention of "administration" were enough to place Defendant Williams or any other member of the administration on notice of being named in this grievance, the allegations in the grievance are not enough to have placed Defendant Williams on notice that Plaintiff intended to hold him liable for alleged violations of the Eighth Amendment. Instead, Plaintiff's only complaints in this grievance were concerning his desire to have a doctor at ASMP to look at his eyes, to have surgery on his eye, and his fear for his life in the hands of Smith State Prison's medical staff. (Id.) After investigation, Defendant Williams informed Plaintiff why his appointment had to be rescheduled and noted Plaintiff went to this rescheduled appointment, which was two (2) days later. (Id. at p. 29.)

The only instance in which Plaintiff names Defendant Williams or even alludes to Defendant Williams is in his appeal of the denial of Grievance Number 171889. Nevertheless, Plaintiff's contentions against Defendant Williams in that appeal concern Defendant Williams' denials of Plaintiff's grievances, not that Defendant Williams had infringed on or prevented Plaintiff's receipt of medical treatment. To the extent Plaintiff wishes to hold Defendant

Williams liable based on the denials of Plaintiff's grievances, he cannot do so. Asad v. Crosby, 158 F. App'x 166 (11th Cir. 2005) (upholding district court's granting of summary judgment on Plaintiff's claim that defendants denied the plaintiff's grievances); see Pressley v. Beard, No. 3:CV-04-2535, 2005 WL 2347369, at *4 (M.D. Pa. Sept. 26, 2005) (noting that liability cannot be placed on prison officials because officials failed to take corrective action following the plaintiff's unsuccessful grievance).

In sum, there is no evidence that the grievances Plaintiff filed would have notified Defendant Williams that Plaintiff would later file suit against him and allege a deliberate indifference claim. This portion of Defendants' Motion should be **granted,** and Plaintiff's claims against Defendant Williams should be **dismissed**, without prejudice, due to Plaintiff's failure to exhaust his administrative remedies as to his claims against Defendant Williams.

## II. Plaintiff's Claims Against Defendant Hutchinson

The undersigned now turns to Defendants' argument that Plaintiff fails to state a viable claim for violation of his Eighth Amendment rights. Having recommended that Plaintiff's claims against Defendant Williams be dismissed, the Court need only assess the viability of Plaintiff's claims against Defendant Hutchinson.

### A. Standard of review

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

In this action, Plaintiff contends Defendants violated his Eight Amendment rights to adequate medical treatment. The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a

serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id.

Moreover, a difference in opinion between the prison's medical staff and the prisoner as to diagnosis or course of treatment does not amount to a claim under the Constitution. Harris v. Thigpen, 941 F.2d 1495, 1505 (citation omitted). Only when deliberate indifference to an inmate's serious medical needs is demonstrated to be "repugnant to the conscience of mankind" or offensive to "evolving standards of decency" will it give rise to a valid claim of mistreatment under the Eighth Amendment. Id.

With these standards in mind, the Court now addresses Defendants' arguments that Plaintiff fails to assert a viable claim against Defendant Hutchinson.

B.  **Assessment of the Viability of Plaintiff's Claims Against Defendant Hutchinson.**

Defendants assert that, though Plaintiff claims he was diagnosed with glaucoma in 2010, the medical condition forming the basis of his Complaint is the alleged worsening vision on his left eye, which triggers "'extreme headaches and migraines.'" (Doc. 35-1, p. 14, citing Doc. 21, pp. 6, 8.) Defendants contend Plaintiff's alleged pain and unspecified worsening is not the type of serious medical condition required for a plaintiff to proceed on a deliberate indifference claim. Even if Plaintiff's alleged condition could be considered a serious medical condition, Defendants maintain Plaintiff fails to establish that Defendant Hutchinson exhibited deliberate indifference to that condition. Instead, Defendants assert, Plaintiff's claims against Defendant Hutchinson stem from his claim that Defendant Hutchinson submitted a false disposition in response to a request to be seen by medical staff upon his return from ASMP on March 11, 2014. Defendants note that Plaintiff returned to ASMP two (2) days later and received treatment, though it was not to the level Plaintiff desired. (Id. at p. 15, citing Doc. 21, pp. 4-5.) Defendants conclude that Plaintiff's allegations against Defendant Hutchinson are tied to a single day and "do not plausibly suggest any action on her part that contributed to [the] lack of medical treatment or a constitutionally significant delay in receiving treatment." (Id. at p. 16.)

Plaintiff asserts he plainly stated that Defendant Hutchinson actively participated in violating his constitutional rights by writing a false disposition to his emergency medical request, which either "denied or unreasonably delayed access to a physician for medical treatment." (Doc. 42, p. 13.) According to Plaintiff, evidence of the falsification of medical records shows deliberate action and deliberate indifference. (Id. at p. 6) (citing Green v. Branson, 108 F.3d 1296 (10th Cir. 1997)). Plaintiff contends Defendant Hutchison allowed him to remain in

agonizing pain, and the pain medications he is prescribed are insufficient to alleviate his pain.[3]
Plaintiff asserts Defendant Hutchinson was actually aware of his need for medical care and
refused to provide him treatment. (Id. at p. 10.) Plaintiff avers "[t]he only thing that will suffice
. . . is adequate medical treatment that will enable him to maintain and sustain his vision and
ability to see." (Id.)

Defendants contend that Plaintiff's response to their Motion suffers from the same deficiencies as his Complaint: he sets forth general, conclusory assertions regarding his loss of vision; he fails to demonstrate any specific actions or inactions on Defendant Hutchinson's part which support his deliberate indifference claim; and he fails to make an allegation that Defendant Hutchinson was on notice of unconstitutional conduct in the delivery of medical care during his visits to the medical unit for treatment of his eyes. (Doc. 43, p. 4.) Defendants assert Plaintiff's allegations against Defendant Hutchinson stem from his contention she submitted a false disposition in response to his request to be seen by medical staff after returning from ASMP on March 11, 2014.

A review of Plaintiff's Complaint and his two (2) amendments thereto reveals that Plaintiff fails to set forth anything more than conclusory allegations that Defendant Hutchinson was deliberately indifferent to his serious medical needs. Plaintiff asserts in his original Complaint that he submitted another medical request on March 11, 2014, once he returned to his cell at Smith State Prison, and Defendant Hutchinson signed her name and "clearly wrote a false disposition in response to" his request. (Doc. 1, p. 6.) Plaintiff then asserts that he was taken back to ASMP two (2) days later and was provided with medical care and treatment, just not of the duration and type he thought appropriate. (Id.) Plaintiff further asserts he filed two (2) more

---

[3] Plaintiff mostly discusses the Defendants' alleged liability under the Eighth Amendment as being in concert. The undersigned has limited Plaintiff's allegations against only Defendant Hutchinson as much as possible while still construing his allegations in the light most favorable to Plaintiff.

medical requests upon his return to Smith State Prison and that "medical staff" did not respond to his requests so he filed grievances. (Id.) Plaintiff alleges he filed an emergency grievance on April 29, 2014, against Defendant Hutchinson and the medical director "in regards to an Eighth Amendment claim violation and false disposition by Nurse Hutchinson." (Id. at p. 7.) In his first Amended Complaint, which appears to be a continuation of the events as alleged in his original Complaint, Plaintiff asserts he "suffered tremendously" from Defendant Williams not providing him with any help, and Defendant Hutchinson "carried out" an "act of cruel and unusual punishment" Defendant Williams "authorized". (Doc. 8, p. 5.) In his second Amended Complaint, Plaintiff contends Defendant Hutchinson "acted recklessly" in failing to provide medical care and acted with deliberate indifference to his serious medical needs. (Doc. 21, p. 9.)

The undersigned has reviewed the allegations contained in Plaintiff's Complaint, as amended and as outlined above, and views the allegations contained therein in the light most favorable to Plaintiff. Plaintiff's contentions against Defendant Hutchinson are nothing more than conclusory statements which do not establish Defendant Hutchinson's liability in this case. Instead, Plaintiff's assertions represent nothing more than "threadbare recitals" of a deliberate indifference claim supported by conclusory statements. Ashcroft, 556 U.S. at 678. Plaintiff's assertions against Defendant Hutchinson do not reveal that she was aware of an objectively serious risk to Plaintiff's health and, even if she were, that she was subjectively indifferent to that risk. Rather, Plaintiff's claims against Defendant Hutchinson center on his assertion that she wrote a "false disposition" to his March 11, 2014, emergency medical request. Plaintiff does not set forth facts indicating Defendant Hutchinson or any other medical personnel at Smith State Prison failed to provide him with any medical care or treatment or delayed his access to medical treatment which exacerbated his medical condition. Rather, Plaintiff's allegations reveal his

displeasure with the medical care and treatment he did receive. This is an insufficient basis for liability under the Eighth Amendment.[4]

This portion of Defendants' Motion should be **granted**, and Plaintiff's claims against Defendant Hutchinson should be **dismissed**. As Plaintiff has not sustained his Eighth Amendment claim, it is unnecessary to address the qualified immunity portion of Defendants' Motion. Martinez v. Burns, 459 F. App'x 849, 851 (11th Cir. 2012) (a qualified immunity defense need not be addressed if the plaintiff cannot sustain an underlying constitutional claim).

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss (Doc. 35) be **GRANTED**. Plaintiff's claims against Defendant Williams should be **DISMISSED**, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies. Plaintiff's claims against Defendant Hutchinson should be **DISMISSED** based on Plaintiff's failure to state a claim. Plaintiff's Complaint, as amended (Docs. 1, 8, 21) should be **DISMISSED**, and this case should be **CLOSED**.

**SO REPORTED** and **RECOMMENDED**, this 3rd day of March, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] The undersigned notes Plaintiff's reliance on Green v. Branson, 108 F.3d 1296 (10th Cir. 1997), for the proposition that the falsification of medical records can show deliberate indifference to medical needs. (Doc. 44, p. 3.) In Green, the Tenth Circuit reversed the district court's granting of summary judgment in favor of a prison doctor. The Tenth Circuit stated, "We are persuaded that a showing of deliberate refusal to provide medical attention, as opposed to a particular course of treatment, coupled with falsification of medical records may give rise to an Eighth Amendment violation as is cognizable under 42 U.S.C. § 1983." Green, 108 F.3d at 1304. Green is clearly distinguishable from the facts of this case. Here, unlike the plaintiff in Green, Plaintiff does not couple Hutchinson's alleged "false disposition" with a refusal to provide medical care. Rather, Plaintiff's primary complaint seems to be that he did not receive "a particular course of treatment." The Green case does not stand for the proposition that the alleged falsification of medical records, standing alone, permits an Eighth Amendment claim to proceed beyond a motion to dismiss.